## Case No. 2,264.

BYAM et al. v. FARR et al.

[1 Curt. 260;[1] 2 Liv. Law Mag. 316.]

Circuit Court, D. Massachusetts. Oct. Term, 1852.

PATENTS—INFRINGEMENT—EQUIVALENTS.

1. Though the use of an equivalent may be an infringement, yet if the specification and claim expressly declare that such equivalent is not embraced within the invention, its use does not infringe.

[Cited in Wallace v. Holmes, Case No. 17,100; Waterbury Brass Co. v. Miller, Id. 17,254; Saxe v. Hammond, Id. 12,411; Novelty Paper-Box Co. v. Staples, 5 Fed. 924.]

[2. Cited in Millner v. Schofield, Case No. 9,-609a, to the point that the making and selling of the separate materials for a patented combination is not an infringement of the rights of its inventor.]

This was a bill in equity founded on letters-patent [No. 68], and praying for an injunction and an account. The complainants moved for a preliminary injunction, to restrain the defendants from making the thing patented.

Hodges, for complainants.

Durant, for defendants.

CURTIS, Circuit Justice. The complainants have shown that they are assignees of letters-patent, bearing date October 24, 1836, granted to Alonzo D. Phillips, for an improvement in the manufacture of friction matches, and extended for the term of seven years on the petition of the administrator of Phillips. To make the prima facie title, on which to rest this motion for a temporary injunction, the bill alleges that a judgment at law has been heretofore recovered in this court, against other parties, and states other facts, which it is not necessary to advert to, because this prima facie right of the complainants has not been seriously controverted. The real question is, whether the defendants have infringed this exclusive right, so as to subject themselves to an injunction. The complainants allege that their exclusive right has been violated in two particulars. 1. In the use of the composition of matter claimed by the specification. 2. By putting up the matches in the manner described and claimed therein.

As to the first, it is proved and admitted,

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

that the defendants have used a composition of matter, consisting of phosphorus, sulphuret of antimony, and glue, into which, when in a fluid state, matches, having sulphur on their ends, are dipped. The claim in the patent is in the following words: "What I claim as my invention is, the using of a paste, or composition, to ignite by friction, consisting of phosphorus, and earthy material, and a glutinous substance only, without the addition of chlorate of potash, or of any highly combustible material, such as sulphuret of antimony, in addition to the phosphorus." To make this claim intelligible, it should be stated, that it is declared by the specification, that the old method of making friction matches was to use a composition, consisting of phosphorus, chlorate of potash, sulphuret of antimony, and glue. So that the invention claimed by the patentee, consists in rejecting two of the elements, namely, chlorate of potash and sulphuret of antimony, and substituting in their place chalk, or some earthy matter. To compare the two methods of the patentee and the defendants, to a certain extent, it may be said, that the patentee has improved on the known compound, by omitting two substances previously used, and introducing one not used; while the defendants have merely omitted one substance, previously used. It is insisted, however, that the sulphuret of antimony, used by the defendants, in point of fact, has the same effect in their composition, as the chalk or other earthy substance has in the plaintiffs' composition. That both act mechanically only, and not chemically; the office of each being to surround the particles of phosphorus, and, aided by the glue, to retain them, and protect them from the air, and from the action of caloric, until the phosphorus is ignited by friction, and then to convey the heat to the sulphur, and thus cause the match to burn. In other words, that, in this compound, and for this manufacture, sulphuret of antimony is a mere equivalent for the earthy matter employed by the patentee; and that though it is not, technically, in the nomenclature of chemistry, an earthy matter, yet that the claim is not to be limited to substances strictly, so termed, because while the specification declares chalk, or Spanish white, to be the best material, it also makes known that the ingredients may be varied, "and other absorbent earths, or materials, may be used instead of the carbonate of lime." And it is urged, that the substance of this invention does not consist in the use of carbonate of lime in this composition, but in the use of a material suitable to surround and protect the phosphorus, and convey its heat to the sulphur when ignited, and that the defendants use such a material. There is, certainly, much force in this argument; but it is encountered by difficulties, which I think insuperable.

To substitute, in place of some one element in a composition of matter, a mere known equivalent, is an infringement; because, although the patentee has not expressly mentioned such equivalent in his claim, he is understood to embrace it, and, in contemplation of law, does embrace it, without an express mention of it. But he is not obliged to embrace equivalents in his claim. He may, if he choose, confine himself to the specific ingredients mentioned, and expressly exclude all others; or he may expressly exclude some, or one other. If he does so, it cannot be maintained that what he has expressly disclaimed, is, in point of law, claimed. Now this patentee declares, in terms, that his composition is to be without the addition of sulphuret of antimony. It is said that he meant to exclude it, because he considered it, as he says in the claim, a highly combustible material; that he was under a mistake, as it is not so. This may be true; but the question is not what induced the patentee to exclude it, but whether he has, in fact, excluded it. If he made a mistake, the patent law affords means of correcting it; but, until corrected, the claim must be taken as it stands, whatever error may have led to it. It is also argued that it was the intention of the patentee, to exclude sulphuret of antimony only when used with chlorate of potash. But this is not consistent with the plain meaning of the words; which are, "without the addition of chlorate of potash, or any highly combustible material, such as sulphuret of antimony." And when it is borne in mind what the composition previously known was, and how the patentee has described his invention, I think it cannot be admitted that the patentee really intended to cover the composition used by the defendants. As already stated, the old method was to combine phosphorus, glue, sulphuret of antimony, and chlorate of potash. If the patentee intended to cover an improvement, consisting only in the omission of the chlorate of potash, as is now said, he might reasonably have been expected so to declare. But instead of this, he, in terms, declared that his invention did not extend to the use of this substance. So far as respects his own intent there can be no question it was to make a claim, which excluded the composition used by the defendants. And this is decisive. It must be remembered that one object of the patent law, in requiring the inventor to put on the public records a description of his invention, is to inform the public what may safely be done during the existence of the patent, without interfering with his claims; and, upon the soundest principles, the patentee must be held to be estopped from asserting a claim, which is expressly waived on the record.

It appeared, by the analysis of the composition on the defendants' matches, that some oxide of antimony and some silver was found in it, and the evidence shows that when subjected to heat, in the process of manufac-

ture, the sulphur combined with the antimony, is partially given off, and oxygen is taken up from the atmosphere. These effects are increased in proportion to the degree of heat applied to the antimony. And it is urged that the use of oxide of antimony and silver are not excluded from, but are fairly included within the patent. As to the silica, I am satisfied it is merely an impurity, in the sulphuret of antimony of commerce, and that the right to use this is the right to use it in the state in which it is ordinarily bought and used. And, in respect to the changes which it necessarily undergoes in any mere process of manufacturing the composition, the right to make such changes is inseparable from the right to use the thing. There is evidence that, for a short time, the defendants heated the antimony separately, and so set free from it more sulphur, and combined with it, more oxygen. Whether this would amount to an infringement, I have not thought it necessary to determine; because, as it was merely a temporary experiment, which has been abandoned, it cannot afford ground for an injunction after the lapse of considerable time, even if it were free from doubt that it was an infringement, which is by no means the case.

In respect to the other claim, for the manner of putting up the matches in paper, I find it consists in sawing the matches in sheets so as to leave them united at one end, and wrapping them in strips of paper in the mode described. The defendants' matches are left attached at one end in the same way, but not wrapped in strips of paper. I am of opinion that this claim must be construed to embrace only the entire and complete mode described; and consequently, as the defendants do not use that mode, but only a part of it, which the patentee does not claim to have separately invented, the defendants do not infringe on what is thus claimed.

The motion for an injunction is denied, with costs.

[NOTE. Patent No. 68 was granted to A. D. Phillips, October 24, 1836. For other cases involving this patent, see Byam v. Eddy, Case No. 2,263; Ryan v. Goodwin, Id. 12,186; Brooks v. Byam, Id. 1,948; Byam v. Bullard, Id. 2,262.]